Good morning, your honors. My name is Mary Hudson Buell. I'm an assistant state's attorney representing the people. Very good. Each side has 15 minutes as you may have noticed when you stepped in. We do have three oral arguments up today and so we're going to try and keep you to that. So actually anytime you're ready, Mr. Cook, I can assure you, you can see we've read the briefs, we've pulled the printed cases, we're familiar with the record, so get to your strongest point. Anytime you're ready. May it please the court, I'd like to focus primarily on issues 1A and if time permits, also 2, but I'm certainly willing to answer questions about any of the issues. I'd also like to reserve three minutes for rebuttal. Certainly. Addressing issue 1A first, the admissibility of the recorded conversations between Mr. Martin and Mr. Pinnocks depends on whether those conversations pertain to Mr. Martin's pending charges for attempt murder and attempt armed robbery. The state hasn't contested that Mr. Pinnocks was a government agent and that he deliberately elicited those statements after Mr. Martin's right to counsel had attached on those charges. The only thing that's left to find a violation of the Sixth Amendment is whether Mr. Martin's statements pertain to those pending charges. This precise issue was addressed in the case of People v. Brown. In that case, just as in this case, the defendant made statements to a government informant that were not direct admissions to the charged crimes, but were admitted at trial on those crimes to show the defendant's consciousness of guilt. And the court in Brown held that those statements pertain to those pending charges because they were relevant to show a consciousness of guilt and were incriminating. The statements here are indistinguishable from those in Brown. In both cases, the defendants made statements involving an attempt to tamper with witnesses, to bribe witnesses, that sort of thing. And the court held that those statements, even though they weren't direct admissions of guilt to the charged crimes, did pertain to those charged crimes. Brown is indistinguishable, and it's also consistent with the Sixth Amendment right to counsel as interpreted in United States v. Messiah and all of the cases that interpret that case. Messiah and the other U.S. Supreme Court cases following it have held that once a defendant is indicted and has a right to counsel, the state can't go around the defendant's attorney and obtain incriminating statements from the defendant to use at trial on those pending charges. In Brown, however, Justice Clyde Keene went on at some length that the snitch in that case, they used a snitch, a guy named Spruill. Correct. And this was the sixth time Mr. Spruill came in with allegedly taking an incriminating confession from a cell or tier mate. Right. This kind of professional snitch. In this case, it was a victim that came forward after he saw the defendant in a visiting room. That's correct. And it was then, according to him if you believe it, that by the defendant's go-between. Do you think that makes any difference? I don't, Your Honor. And the reason is under the Sixth Amendment, of course, the statements by a professional snitch are probably less reliable than statements by someone like this in this case. But there's not a reliability component to the Sixth Amendment right to counsel. Regardless of whether the statements are reliable, the state has to comply with those rules. All that really matters is whether or not the person who testifies about the defendant states is a government agent. And here, there's no dispute that when Mr. Penix went in wearing a wire, he was working with the government. So I don't think that distinction makes a difference. I would also point out that the holding in Brown is consistent with and supported by the holding of the United States Supreme Court in Maine v. Moulton. In that case, there is a slight distinction between that case and this case. In that case, the defendant in Moulton made statements that were direct admissions to the charged crime and also statements that were just kind of like the ones in this case, just admitted to show consciousness of guilt because they showed an attempt to tamper with witnesses. And the Supreme Court in that case simply held the defendant's statements inadmissible. It didn't draw any distinction between direct admissions to the charged crimes and statements that just show consciousness of guilt. But they did make a distinction in Maine v. Moulton where, for example, had that been a co-defendant statement where had the defendant, the target, made a statement to somebody saying, I want to murder my co-defendant, that the state could have used the charges on a solicitation of murder in a new charge of solicitation of murder. Right. They could use it. Right. And the same thing kind of applies to this case. If the state were to charge Mr. Penix separately for the bribe attempt, which they have, those are still pending, they can use these statements at that trial. They just can't use them at a trial at charges that were pending at the time the statements were made. Let's assume, counsel, for a second, that you're absolutely right in the points you're raising. Sure. How do you get around the positive ID? When I read this, and you correct me if I'm wrong, Martin, he robbed a guy in the gas station. Correct. He pulled out a gun on him, shot at him point blank, walked away, came back, shot at him again, the gun jammed, walked away, came back, the gun jammed again. The guy's looking at him. Then the guy positively IDs him. How do you get around that? Well, I think there's several weaknesses in the identification. First of all, Mr. Penix at the time, although he said he'd only, he'd been out that night, it was late at night, he said he only had one beer, but we know from a stipulation between the parties that his blood alcohol level, at some point at the hospital after the shooting, was still a .17, more than twice the legal limit. So I think we can deduce from that that he was fairly drunk at the time that this all happened, which does have some bearing on his ability to identify his assailants. He also tried to lie. He did lie about that, which shows that he's maybe trying to bolster his ID. Maybe he doesn't think it's particularly strong. I would also point out that the identifications that he made later, the photo array and the lineup, did have some suggestive elements that also weakened his identification. In all of those identifications, Mr. Martin was either the only person or one of two people who had a very distinctive feature, long braided hair. He knew the defendant though, right? There's no question he knew the defendant. The question could still be wrong. He identified the guy he knew. The question is how well did he know the defendant. Basically he said he'd seen him. Well, the degree of acquaintance between two people, the more the acquaintance, the stronger the ID. And here he said he'd just seen him around the neighborhood. He didn't even know his last name. He'd never actually spent time with him. So we're dealing with someone who knew his first name and that's it. I mean, so he's seen him in passing a few times. That, you know, given the other factors, the fact that he was intoxicated and the fact that there were some suggestive elements to the lineup identifications, that does impeach his identification to a significant extent. And also when you're looking at the prejudice from the evidence, supposing that the recorded statements were inadmissible, it's not just looking at the strength of the evidence that was admissible, it's also how incriminating was the evidence that was inadmissible. What effect did that have on the prior fact? It was a bench trial, but... It was a bench trial. And the judge commented on it. I mean, his comments were in general in announcing his guilty verdict were brief, but he did mention this evidence. So he did consider it as corroboration of that identification. So that adds to the prejudice from this. One other point to make about this is that even though Brown provided direct binding on-point authority for the inadmissibility of these statements, defense counsel didn't make an objection based on Brown. Instead, counsel made a far weaker objection just based on other crimes rules that the prejudicial effect outweighed the probative value. Given the weakness in that argument and the strength of this argument, I think it's clear that counsel didn't have any valid strategic reason to not object on the basis of the Sixth Amendment right to counsel. But based on that, so since the hope then would be that we would bind to your argument about ineffective assistance, and clearly he was ineffective. The question is, is he so ineffective that you were able to meet the burden under Strickland? That's what we have to look at, right? Going with Justice Steele's question is, wouldn't you have to show that this would have ended up in a different result had it not been? Right. And I think it would given the weaknesses in Mr. Pinnock's identification and the highly incriminating nature of the evidence that was admitted. I think we can say that there's at least a reasonable probability that the outcome would have been different had this evidence not been admitted. I'll just address briefly the second argument. The recorded statements weren't the only inadmissible and very incriminating other crimes evidence that the State introduced. The State also introduced evidence of another shooting that Martin allegedly committed a few weeks before, but there were significant differences between the two shootings that made the other crime inadmissible. The instant case was an attempt armed robbery, while the other crime was just a shooting that occurred from a kind of a street fight that escalated. We had a different number of perpetrators in the two cases. This wasn't offered for proof of modus operandi. It was offered to prove I.D. Strictly I.D. That's correct. So the State had to prove that in addition to the victim knowing the fellow that shot him, that the fellow that shot him had that same gun when he shot somebody else three weeks earlier on the south side. So the question is, is it probative that there's a witness on the south side, rather that your client possessed the same handgun on the day he shot this victim, as when he shot a fellow three weeks ago? Does that help the State's case to prove identification? Well, if probative, yes. But even when you're not dealing with modus operandi evidence, the State still has to show that there are general similarities between the two cases in order for the other crime to be probative enough to be admitted. Well, does Peeble v. Coleman, which is a gun case, say that? Peeble v. Richardson, Peeble v. Taylor, all of which are gun cases. Correct. They all consider the similarities between the two cases in assessing how probative the other crime is. But the fact that it does establish a connection between the two crimes and therefore it establishes that it was probably the same perpetrator, the fact that it establishes identification isn't enough to permit us to consider? I don't believe so, because in this case we have a number of significant differences that reduce the probative value of the other crime. And these are types of differences that weren't present in any of those Illinois Supreme Court cases, Coleman, Taylor, and Richardson. In those cases, particularly Richardson and Taylor, you have two crimes that are almost identical. You have shootings that occur during armed robberies by a single perpetrator that occur within a few days of each other in both of those cases. So the level of similarity between the charge crime and the other crime in those cases is far higher than here. And the same applies to Coleman. In Coleman you have one crime that occurs at a drug house, two people are shot at that drug house, and then the defendant at another time shoots the guy who ran that drug house because he had a motive, some disagreement with that man. So there was a connection between the charge crime and the other crime in Coleman that isn't present in this case. And so that adds to the probative value of that evidence and by distinction reduces the probative value in this case. You still have a few minutes for your reply. Okay. Thank you, Your Honors. We would just ask for those reasons that you reverse the conviction and remand for new trial. State. Good morning again. May it please the Court. The defendant argues that his Sixth Amendment rights were violated with the omission of the tapes. Even if we take away those tapes, the evidence that was presented at this trial overwhelmingly established the defendant's guilt. We already talked a little bit about Mr. Pinnock's identification. He knew the defendant from the uptown neighborhood. He testified he had known him for three different years. He testified that the lighting was good at the gas station where this occurred. He testified that when the defendant approached him and said, give me what you got, he went in his pockets, looked for some money, and then saw the gun pointed at his head. The evidence established that the defendant was in arms length away. This victim positively identified the defendant. Not only did he see him at the gas station, this victim also immediately told the police, identified him. In the photo array within the week, in the lineup, additionally his cousin, Ivan Byers, testified that he went to visit his cousin in the hospital. And at that time, the victim told Mr. Byers, Spencer shot me. The defendant's the one. He identified the defendant. With regard to the fact that this defendant may have been intoxicated, he may have lied about that, it doesn't minimize the fact that this victim knew this defendant, this defendant held a gun to his head and attempted to shoot him. Additionally, as Justice Seal recognized, the defendant walked away two times and tried to shoot the victim again. Clearly, proper identification evidence. Not only do we have the victim's testimony, we have the corroboration of the videotape. The videotape was presented at trial and the testimony established that the defendant was on that videotape. The defendant did have the gun in his hand and he walked away. Again, corroboration to the victim's testimony. What else do we have in this case? We have the testimony of Mr. Byers. Mr. Byers, and again, he was in jail. The defendant was also in jail. And during that time, they had a little bit of a relationship, just because of conversations in the chair. The defendant admitted to Mr. Byers that he shot the victim. Not only did he say, I shot him, he also said, I shot him because I thought he had money. Again, we had clearly overwhelming evidence to establish this defendant's guilt in this case. So even removing the tapes from the equation, everything before when the victim was wired, on December 2nd, you have his testimony, what happened in February, you have him seeing the defendant when he went to visit his cousin in jail in August, and then you have the testimony of Mr. Byers to conversations he had with the defendant concerning this case in September. What's your strongest case for trying to say that the tape should go in, that the court is correct to let it in? Your Honors, right now I'm looking at the fact of, let's remove him from the situation. And with regard to People v. Brown, the counsel relies heavily on. If you look at the cases, which Justice Quinn already acknowledged, we have a serial confessor. There was no other evidence to prove the defendant's guilt in that case other than Mr. Spruill's testimony. That's all we had. And if they only had his testimony, he is a jailhouse informant. Out of eight years, he testified six times in murder confessions, most of the time with the same state's attorney. You also have his criminal background, and you also, when you review that case and you review the court's holding, he had a lengthy criminal history dating back to 1991. And every time, he didn't serve the full sentence. So here, there would have been a reasonable doubt, and again, Brown was a jury case as opposed to our bench trial. You have a serial confessor who would have been attacked based solely on if he only had his testimony, and that's why they had to add the incriminating wiretap and the evidence of the two maps and of the list of witnesses and of the bribe. The state had nothing else. In this case, we had a lot of additional evidence. With regard to the other crimes evidence, we had a gun. We had the same gun, the same shell casings, put in the same database, and the evidence went back to that defendant. That is certainly sufficient evidence to prove that this was the same. The other crimes evidence was properly admitted as an identity of the defendant. For these reasons, we respectfully request that you affirm the defendant's conviction. Thank you. Thank you. Sir Cook, briefly. Just a couple of points about the strength of the evidence that we didn't address in the previous argument. The state mentions the videotape of the shooting. Several points. First of all, the resolution of that time-lapse video is not very good, so we can't determine just from looking at the person on the videotape that that was Mr. Martin. I would also point out that Mr. Pinnicks reviewed that videotape before he testified, so to the extent that his testimony is consistent with the video, that could have been because he viewed it before. And also the video- Yes, when they crossed both the police and the victim, they could have brought up any disputes between the victim's version where he's lying in a hospital after he'd been shot to the video, and I don't recall seeing any. Well, what we did learn from the crossing about his prior statements, Pinnicks had given less specific testimony about the exact course of events during the altercation. It was only at trial after he'd seen the video that he testified very specifically about the three different attempts going back and forth where the gun jammed. As for the state also mentioned defendants' alleged admission to Ivan Byers. I would point out that that wasn't recorded, and Byers on his own is not a very credible witness. He was facing at the time 40 years in prison on federal gun and drug charges. He ended up getting an awfully good deal of 10 years, which gave him a pretty strong motive to lie to cooperate with the state. So in that respect, Byers is fairly similar to Mr. Spruill in Brown. One other point about Brown, the state said that there was no other evidence other than the evidence that was admitted from Mr. Spruill's testimony and the recorded statements. That wasn't quite true. There was evidence that the defendant was seen on the day of the crime. They're not really defending that. I know. And she didn't even address that. All right. I'll stand on my arguments then. Thank you, Your Honors. Thank you both. Thank you for the arguments and the briefs. This case will be taken under revisal.